UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LARRY MICHAEL ADAMS,
a/k/a Larry Michael Haller,

CIVIL NO. 01-767 (JMR/JMM)

Petitioner,

v.

REPORT AND RECOMMENDATION

STATE OF MINNESOTA and
LOUIS STENDER, Warden of the
Minnesota Correctional Facility -
Moose Lake,

Respondents.

The above matter is before the undersigned upon a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Petitioner appears pro se; James C. Backstrom, Esq., Dakota County Attorney, and Debra E. Schmidt, Esq., Assistant Dakota County Attorney, appear on behalf of Respondents. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that a Writ of Habeas Corpus be denied and the Petition [Docket No. 1] be dismissed.

## FINDINGS OF FACT/REPORT

### Procedural Background

On June 24, 1999, Petitioner was convicted after a jury trial in Dakota County, Minnesota of first degree criminal sexual conduct involving his nine-year-old stepson. He was sentenced to a 147 month term which he is currently serving at the Minnesota

FILED JUL 18 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD______
DEPUTY CLERK______

Correctional Facility in Lino Lakes, Minnesota. Petitioner appealed his conviction to the Minnesota Court of Appeals, claiming that he received ineffective assistance of counsel, that the evidence was insufficient to support the conviction, that there was jury misconduct, and error in sentencing. The Court of Appeals affirmed his conviction. See State v. Adams, No. C4-99-2167, 2000 WL 1780281 *1 (Minn. App. Dec. 5, 2000). The Minnesota Supreme Court denied review of Petitioner's case.

With this Petition for a Writ of Habeas Corpus, Petitioner seeks release from state custody, on the same grounds brought on appeal: ineffective assistance of counsel, insufficiency of evidence to convict, jury misconduct, and abuse of discretion in sentencing. [Docket No. 1, Petition]. Respondents move to dismiss the Petition. [Docket No. 5].

**Standard for Habeas Relief Under 28 U.S.C. § 2254**

The standard of review of a Petition for a Writ of Habeas Corpus brought by a state prisoner is governed by 28 U.S.C. § 2254(d) which states as follows.

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court of Appeals for the Eighth Circuit described review as follows.

Under the "contrary to" clause, the writ may be granted if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law

or if decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000)(citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle but unreasonably applied that principle to the facts of the prisoner's case. See Id. Under this standard, we "must deny a writ--even if we disagree with the state court's decision--so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. May, 16 2001)(citing Williams, 529 U.S. at 409-413).

In examining facts, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to the factual findings of state appeals courts as well as those of trial courts. See Sumner v. Mata, 449 U.S. 539, 547 (1981) ("Section 2254(d) by its terms . . . applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"); Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994) ("There is a presumption that historical fact-finding by a state court, whether trial or appellate, is correct."), cert. denied, 513 U.S. 1160 (1995); Steele v. Young, 11 F.3d 1518, 1520 n.2 (10th Cir. 1993) ("Explicit and implicit findings of historical facts by the state trial and appellate courts are presumed correct.").

An evidentiary hearing shall not be held, unless the applicant shows that the claim relies on a new rule of constitutional law, made retroactive, or relies on a factual predicate that could not have been previously discovered through the exercise of due

diligence, and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable fact finder would have found the applicant guilty. 28 U.S.C. § 2254(e)(2).

**Factual Background**

In accordance with 28 U.S.C. § 2254(e)(1), the findings of fact made by the Minnesota trial and appellate courts are presumed correct unless rebutted by the Petitioner with clear and convincing evidence. The Minnesota Court of Appeals found the relevant facts as follows:

> Karen Casale is a friend of the complainant, C.C. and his family. On October 1, 1998, she reported to the Hastings police that C.C. told her that his stepfather, Adams made him play with Adams's penis until "some white stuff came out." C.C. had been living in Adams's home during the time of the alleged abuse. C.C. is a nine-year-old boy with an I.Q. of 46. During an initial interview with a police investigator, C.C. denied that abuse occurred. Nearly a week later, the police interviewed C.C. a second time. During the second interview, C.C. said that Adams had forced him to "suck on his pee-pee" and threatened to ground him unless he complied. Based on these allegations, Adams was arrested and charged with criminal sexual conduct in the first degree.
>
> Adams was released on the condition that he have no contact with C.C. and that he refrain from drinking alcoholic beverages. Adams violated the conditions of his release on two separate occasions, once by making contact with C.C. and once by drinking alcoholic beverages.
>
> In late November, C.C's mother brought C.C. to the office of the Dakota County Attorney. C.C.'s mother claimed that C.C. had recanted his allegations of abuse. When interviewed in private, however, C.C. stated that he wanted Adams to return home because his family was in need of financial support that Adams had provided.
>
> At trial, C.C. testified consistently with this prior allegations that Adams had sexually abused him. In addition, other witnesses testified that C.C. had made statements to the effect that the abuse had occurred, and an expert witness testified that C.C. had below-normal intellectual capacity. The jury found Adams guilty of criminal sexual conduct in the first degree.

> Following the verdict a psychologist evaluated Adams and issued a report suggesting that Adams would be a good candidate for community treatment and supervision. Upon discovering that Adams failed to reveal that he twice violated the conditions of his release, however, the psychologist retracted this recommendation. At sentencing, the district court found that Adams was not amenable to community treatment because he had violated conditions of release and had denied wrongdoing. The district court sentenced Adams to a term of 147 months in prison, a 50% upward durational departure from the presumptive 98 months. In imposing the upward departure, the district court cited the following aggravating factors: C.C. is uniquely vulnerable due to his limited mental capacity and lack of communication skills; and Adams abused his relationship of authority and trust.

Adams, 2000 WL 1780281 *1.

## I. PETITIONER IS NOT ENTITLED TO HABEAS RELIEF FOR JURY MISCONDUCT

Petitioner alleges jury misconduct on the grounds that one of the jurors was sleeping at trial. According to Petitioner, during the course of the trial, the judge interrupted, told the jury to take a short break, then went off the record and stated that she thought a jury member had fallen asleep. See Petition, Ground 5. Petitioner states that "this jury member who was sleeping might have missed some crucial testimony."

In order to warrant any relief on grounds of juror misconduct, Petitioner must present evidence of juror misconduct that is "sufficient to establish grounds recognized as adequate to overturn the verdict." United States v. Caldwell, 83 F.3d 954, 956 (8th Cir. 1996); see also United States v. Tucker, 137 F.3d 1016, 1030 (8th Cir. 1998). Petitioner does not specify at what point in the trial the sleeping juror was discovered, or what evidence the juror might have missed. In fact, the record does not reflect a sleeping juror at all. In their Response, Respondents state that Petitioner may be referring to an incident during defense counsel's closing argument in which the judge interrupted, held a bench

conference with the attorneys, and gave the jurors a morning break. See Respondent's Memorandum, p. 10. However the record does not indicate that the conference or break was prompted by a sleeping juror. Regardless of whether or not a juror was found sleeping, Petitioner has not established that he was prejudiced as a result. The fact that a juror "might have missed" some unspecified testimony is inadequate to overturn the verdict and Petitioner is not entitled to relief on these grounds.

## II. PETITIONER WAS NOT DENIED EFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that his trial counsel, Mark Paige, First Judicial District Public Defender, failed to provide effective assistance of counsel. Petitioner alleges three grounds for his counsel's deficiency. He contends that his counsel did not thoroughly investigate the case; that his counsel did not spend enough time with him prior to trial; and that his counsel failed to object when a juror was discovered to be sleeping. See Petition 1, Grounds One and Two.[1] The Minnesota Court of Appeals applied the appropriate legal standard to these claims and, consistent with the facts, determined that Petitioner was not denied effective counsel. See Adams, 2000 WL 1780281 *3.

To secure habeas corpus relief based on a claim of ineffective assistance of counsel, a petitioner must establish (1) that his attorney's performance "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 688, 694 (1984).

---

[1] In Ground One, Petitioner also claims actual innocence of the crime, however, his supporting facts for that ground all allege deficiencies of his counsel. Therefore we construe this ground as a claim of ineffective assistance of counsel.

In evaluating counsel's performance under the first prong of the Strickland test, the court must be "highly deferential," indulging in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Furthermore, the defendant must overcome the presumption that "the challenged action 'might be considered sound trial strategy.'" Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Walker v. Lockhart, 852 F.2d 379, 383 (8th Cir. 1988) (counsel's trial conduct is not constitutionally ineffective "merely because other lawyers may have used another strategy"). "Counsel's challenged conduct is to be evaluated in light of the circumstances surrounding the decision, not with the 20/20 vision of hindsight." Garrett v. United States, 78 F.3d 1296, 1301 (8th Cir.), cert. denied, 117 S. Ct. 374 (1996). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

In order to satisfy the second half of the Strickland test, the petitioner must make "a showing of prejudice sufficient to undermine confidence in the outcome of the trial." Garrett, 78 F.3d at 1302. To determine whether an attorney's errors affected the outcome of a case, the Court cannot look merely at the errors alone. The effect of attorney errors can be determined only by looking at the case as a whole. Thus, "in determining the existence vel non of prejudice, the court 'must consider the totality of the evidence before the judge or jury.'" Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 695).

Petitioner claims that his counsel did not spend enough time investigating the case. However, Petitioner does not provide the court with any indication as to what further investigation could have been conducted or what exculpatory evidence may have been uncovered. Without specifying what evidentiary items were missing, Petitioner merely contends: "given this evidence [he] would have been able to prove his innocence beyond

a reasonable doubt." See Petition, Ground One. Petitioner's conclusory allegations fail to satisfy his burden of showing that his attorney's investigation fell below the standards of a reasonably competent attorney. See Smith v. United States, 635 F.2d 693, 698 (8th Cir. 1981)(habeas petitioner who claimed counsel failed to investigate without establishing what aspects of the case were not investigated failed to meet burden of proving ineffective assistance of counsel); Beans v. Black, 757 F.2d 933, 936 (8th Cir. 1985)(habeas petitioner failed to establish prejudice caused by alleged failure to investigate where he did not demonstrate what evidence his attorney could have discovered which would have changed attorney's advice or helped petitioner's defense).

Petitioner next maintains ineffective assistance of counsel on the grounds that his attorney did not spend enough time with him prior to trial. He alleges a total of 45 minutes. Again, Petitioner failed to meet his burden as he does not specify what additional evidence counsel could have discovered by spending more time with him. See Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997)(assertion that counsel did not consult sufficiently with defendant does not substantiate ineffective assistance claim where petitioner failed to specify what exculpatory information he could have conveyed to counsel through further investigation).

Petitioner also contends that his representation was rendered ineffective by his counsel's failure to object when a juror was discovered to be sleeping. As already discussed, Petitioner has not established that he was prejudiced as a result of the sleeping juror. Likewise, Petitioner has not established prejudice as a result of his counsel's failure to object to the sleeping juror. Petitioner is not entitled to relief, as there is no evidence that the outcome of the trial would have been different had defense counsel objected to

the sleeping juror.

## III. THE EVIDENCE WAS NOT INSUFFICIENT TO CONVICT

Petitioner next claims that the evidence was insufficient for the jury to convict beyond a reasonable doubt. In a § 2254 habeas proceeding, we must examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir.1995) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In reviewing the sufficiency of the evidence, we are not permitted to conduct our own inquiry into witness credibility. Judging credibility is a task reserved to the jury. See United States v. Anderson, 78 F.3d 420, 422-23 (8th Cir.1996). "[A] witness's inconsistencies simply raise an issue of credibility, and the trier of fact is entitled to make the ultimate decision of whether testimony is to be believed." Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000).

Petitioner challenges the credibility of the complainant, C.C., on the grounds that his pretrial and trial testimony was contradictory and inconsistent. See Petition, Grounds 3 and 4. During his first police interview, C.C. initially denied allegations of sex abuse. When interviewed a second time, C.C. admitted sex abuse implicating Petitioner. During a third interview, C.C. recanted his previous allegations.

The jury also heard testimony that shed light on the inconsistencies in C.C.'s statements. C.C. testified that his mother told him that he "shouldn't tell people about what's going on or [he] would have to go to a foster home." See Trial Transcript, p. 90, C.C. Testimony. C.C. also said that he later told the prosecutor that the abuse did not occur

because a family friend, Dave Hunter, told him to do so. Id. C.C.'s teacher testified that C.C. told her that he was going to "stick to his story" so that Petitioner could return to their home, but also said that it was a "fake story." Id. at 216, Tollefson Testimony.

We cannot say that no rational trier of fact would have believed C.C.'s allegations of abuse despite the inconsistencies in some of his statements. See e.g., Loeblein, 229 F.3d at 726 (8th Cir. 2000)(child's trial testimony about sexual abuse sufficient to sustain conviction even though it conflicted with some of her out-of-court statements). A victim's testimony is, by itself, normally sufficient to sustain a conviction. See United States v. Wright, 119 F.3d 630, 634 (8th Cir.1997). We therefore find that the evidence was sufficient to sustain Petitioner's conviction and, consequently, that the decision of the state courts was neither contrary to nor involved an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

## IV. PETITIONER IS NOT ENTITLED TO HABEAS RELIEF FOR ERROR IN SENTENCING

To obtain habeas relief for sentencing error when the sentence imposed falls within statutory guidelines, a defendant must show either "a clear and convincing case of abuse of discretion" or "a patent violation of a constitutional guarantee." Wharton-El v. Nix, 38 F.3d 372, 375 (8th Cir. 1994)(citations omitted). Petitioner does not allege a constitutional violation. He seeks relief on the grounds that the trial court abused its discretion in sentencing by refusing to grant him a downward dispositional departure. He states: "it was an abuse of discretion for the trial judge to order Petitioner to prison when he is amenable to treatment and probation in the community." See Petition, Ground 6.

In support, Petitioner points the Court to the initial recommendation of, Dr.

Martson, psychological evaluator, which deemed Petitioner suitable for treatment in the community. However, Petitioner withholds any mention of Dr. Martsen's supplement to that report, deeming Petitioner unsuitable for community treatment after learning that Petitioner violated his conditions of his release by contacting C.C. and using alcohol. Dr. Martsen states: "Mr. Haller is not amenable to community supervision or treatment. If he cannot comply with these conditions of release even prior to his conviction or sentencing, how could he be expected to comply with them subsequently and why would anyone trust him to." See Docket No. 7, Appendix J, Psych Eval and Letter. We recommend a finding, as did the Minnesota Court of Appeals, that the trial court did not abuse its discretion in sentencing. See Adams, 2000 WL 1780281 *2.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition for a Writ of Habeas Corpus be denied and the Petition [Docket No. 1] be dismissed.

Dated: July 18, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 2, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

# Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500